Colin D. Dailey (SBN 293942)
colin.dailey@bclplaw.com
David J. Root (SBN 307251)
david.root@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone:  (310) 576-2128
Facsimile:  (310) 576-2200

Daniel A. Crowe (*pro hac vice*)
dan.crowe@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone:  (314) 259-2619
Facsimile:  (314) 259-2020

Attorneys for Plaintiff Puff Corp.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Puff Corp., a Delaware corporation,<br><br>    Plaintiff,<br><br>        vs.<br><br>SHO Products, LLC, a New York limited liability company; and MasterMinded, Inc., a California Corporation,<br><br>        Defendants.<br>_____<br>SHO Products, LLC, a New York limited liability company; and MasterMinded, Inc., a California Corporation,<br><br>        Counterclaimants,<br><br>        vs.<br><br>Puff Corp., a Delaware corporation,<br><br>        Counterdefendant. | Case No. 2:22-cv-02008-GW-KS<br><br>**PUFF CORP.'S MOTION TO AMEND CLAIM CONSTRUCTION**<br><br>[Filed concurrently with Declaration of Colin D. Dailey; [Proposed] Order]<br><br>Judge:  Hon. George H. Wu<br>Date:   April 4, 2024<br>Time:  8:30 a.m.<br>Courtroom:  9D<br><br><br>Action Filed:  March 29, 2022<br>Trial Date: June 18, 2024 |

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 4, 2024, at 8:30 a.m. in Courtroom 9D, 9th Floor, United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, the Honorable District Judge George H. Wu presiding, Plaintiff and Counterclaim-Defendant Puff Corp. ("Puffco") will, and hereby does, move the Court for an order modifying the Court's construction of "heating element" from a means-plus-function term to the construction initially proposed by Puffco.

This motion is based on the emergence of new material evidence that Defendants had not provided to Puffco or the Court until after the *Markman* phase. Specifically, contrary to Defendants' representation to the Court that "heating element" is not a term of art in the vaporizer industry, Defendants subsequently provided documents, 30(b)(6) depositions testimony, expert reports, and expert testimony admitting that "heating element" is a commonly-used and well-understood term of art in the vaporizer industry, and that Defendants and their experts use that term when describing the relevant components in the accused devices, including in Defendants' own patent application that they failed to properly disclose.

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the accompanying Declaration of Colin D. Dailey; Proposed Order; the pleadings, records, and papers filed herein; and all other matters that the Court may consider, including the oral argument of counsel.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 1, 2024.

1 Dated:  February 8, 2024                **BRYAN CAVE LEIGHTON PAISNER LLP**

2
                                          By:   *Colin D. Dailey*
3                                                Colin D. Dailey
                                          Attorneys for Plaintiff Puff Corp.
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..............................................................................................1

II.   RELEVANT FACTUAL BACKGROUND .......................................................2

    A.    The '334 Patent ..................................................................................2

    B.    The Claim Construction Arguments and Ruling .......................................4

    C.    After the *Markman* Hearing, New Evidence Emerged Establishing that "Heating Element" is a Common and Well-Understood Term of Art in the Vaporizing Industry ...........................6

III.  LEGAL STANDARDS .....................................................................................11

IV.   ARGUMENT ...................................................................................................12

    A.    The Newly-Obtained Evidence of Record Establishes that "Heating Element" is a Term of Art in the Vaporizing Industry and Connotes Sufficient Structure to a POSITA, and Therefore Should Not Receive Means-Plus-Function Treatment ........................12

    B.    The Court May Modify the Claim Construction of "Heating Element" At Any Stage of the Litigation, Particularly Here When Presented with New Evidence .............................................................16

V.    CONCLUSION ................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.*,
   96 F. Supp. 2d 1006 (N.D. Cal. 2000) .................................................................. 18

*Aquastar Pool Prods., Inc. v. Color Match Pool Fittings, Inc.*,
   2018 U.S. Dist. LEXIS 199735 (C.D. Cal. Nov. 21, 2018) (Wu, J.,
   presiding) ............................................................................................... 5, 13, 16

*Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*,
   359 F.3d 1367 (Fed. Cir. 2004) ............................................................................ 16

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
   460 F.3d 1349 (Fed. Cir. 2006) ..................................................................... 12, 17

*Delta T LLC v. MacroAir Techs., Inc.*,
   No. EDCV 20-728-GW-JPRX, 2021 WL 3721455 (C.D. Cal. Mar.
   29, 2021) ............................................................................................................... 15

*Ernie Ball, Inc. v. Earvana, LLC*,
   No. 5:06-cv-00384-FMC-OPx, 2009 WL 10673153 (C.D. Cal. Sept.
   16, 2009) ............................................................................................................... 18

*Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*,
   764 F.2d 604 (9th Cir. 1985) ............................................................................... 19

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
   750 F.3d 1304 (Fed. Cir. 2014) ..................................................................... 12, 17

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
   91 F.3d 1580 (Fed. Cir. 1996) ......................................................................... 6, 13

*Homeland Housewares, LLC v. Sorensen Rsch. & Dev. Tr.*,
   No. CV 11-3720-GW(JEMX), 2012 WL 12886826 (C.D. Cal. Aug.
   23, 2012), *aff'd sub nom. Homeland Housewares, LLC v. Sorensen
   Rsch.*, 581 F. App'x 869 (Fed. Cir. 2014) ........................................................... 18

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*,
   302 F.3d 1352 (Fed. Cir. 2002) ........................................................................... 17

ii

*Kruse Tech. P'ship v. DMAX, Ltd.*,
  No. CV0904970JVSRNBX, 2010 WL 11519252 (C.D. Cal. Sept.
  21, 2010) ................................................................................................ 18

*Monolithic Power Sys. Inc. v. O2 Micro Intl. Ltd.*,
  C 04-2000 CW, 2007 BL 66044 (N.D. Cal. Mar. 15, 2007) ............................ 18

*Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian
  Nation*,
  331 F.3d 1041 (9th Cir. 2003) ................................................................. 17

*In re Papst Licensing Digital Camera Patent Litigation*,
  778 F.3d 1255 (Fed. Cir. 2015) ......................................................... 11, 17

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*,
  5 F.3d 1255 (9th Cir. 1993) ..................................................................... 17

*Shimoyama v. City of Philadelphia*,
  2008 WL 2412969 (E.D. Pa. June 9, 2008) ............................................... 19

*Space Systems/Loral, Inc. v. Lockheed Martin Corp.*,
  No. C 96-03418 SI, 2006 WL 2684272 (N.D. Cal. Sept. 19, 2006) .............. 19

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
  587 F.3d 1339 (Fed. Cir. 2009) ................................................................ 16

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2011) ......................................................... 12, 13

**Statutes**

35 U.S.C. § 112(f) ................................................................................. 1, 4, 6

**Other Authorities**

Federal Rule of Civil Procedure 59(e) .......................................................... 17

Local Rule 7-18 ............................................................................... 18, 21

Rule 26(a) ............................................................................................... 4

Rule 30(b)(6) ........................................................................................... 8

U.S. Patent No. 9,549,573 ................................................................. 10, 14

U.S. Patent No. 10,517,334 ............................................................*passim*

U.S. Patent No. 11,369,757 ...................................................................... 10

U.S. Patent No. 11,590,296 .............................................................. 10, 14

U.S. Patent No. 11,766,527 ...................................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Plaintiff Puff Corp. ("Puffco") respectfully moves the Court to amend the claim construction of "heating element."  The Court previously construed that term as a means-plus-function term under 35 U.S.C. § 112(f) based largely on Defendants' argument that "heating element" is a vague term and not a term of art in the industry.  However, new evidence emerged concerning Defendants' and their technical experts' admitted use and understanding of the term "heating element" as a widely-used and well-understand term in the pertinent art of portable electronic vaporizer devices.  The new, post-*Markman* evidence includes:

- Defendants' technical experts' reports, deposition testimony, and patents related to electronic vaporizers, all evidencing that "heating element" is a widely used and understood term in the art;

- Defendants' 30(b)(6) witnesses' testimony showing the same;

- Defendants' belated document production showing the manufacturer of the accused Carta OG and Carta 2 devices refers to the relevant components in each device simply as the "heating element;" and

- Defendants' own patent application related to the Carta 2 atomizer, which Defendants withheld from the Court and Puffco even to this day, refers to the relevant component simply as the "heating element."

Thus, the evidence now conclusively demonstrates that the term "heating element" as used in the patent-in-suit related to portable electronic vaporizing devices is a term of art that is commonly used and understood by persons having ordinary skill in the art ("POSITA") in the field of electronic vaporizer devices, and therefore it should not receive means-plus-function treatment.  Defendants withheld this material evidence from consideration by Puffco and this Court during claim construction, and then erroneously argued in their *Markman* briefs that "heating element" was not a term of art in the relevant industry.  Thus, the term "heating

element" should not receive means-plus-function treatment, and instead it should be construed as initially proposed by Puffco, *i.e.*, "an element that heats via resistive heating in order to heat the container by thermal conduction."

This Court has discretion to modify a claim construction at any time in the case to ensure that the final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact.  Here, resolution of this dispute is highly relevant to Puffco's infringement case, where the only claim limitation in dispute across the three accused devices is "heating element."  Defendants have admitted the Carta OG vaporizer has a heating element under the Court's current construction, but they disingenuously refuse to do so for the Carta 2 and the Oura vaporizers despite their own evidence to the contrary establishing that these two devices also have a heating element under the current construction, forcing Puffco to file a motion for partial summary judgment on these issues.  In light of the evidence obtained from Defendants and their experts during fact and expert discovery that overwhelmingly establishes Defendants' argument is meritless, Puffco had hoped Defendants would act in good faith and concede the undisputed fact that the Carta 2 and the Oura have a heating element, but Defendants refuse.  Modification of the claim construction for "heating element" as proposed herein is consistent with the evidence of record in this case, and will promote judicial efficiency by resolving key issues before trial or clarifying the scope of claims for the finder of fact, if necessary.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The '334 Patent

Puffco asserts a claim against Defendants for infringement of claims 1-11 and 13 of Puffco's U.S. Patent No. 10,517,334, titled "Portable Electronic Vaporizing Device," and which relates to "portable electronic vaporizing devices for use with vaporizable products."  (Doc. 1-1 ["'334 Pat."], at 1:16-17.)  Defendants have sold

and/or continue to sell three devices (the Carta OG, the Carta 2, and the Oura) that practice the invention claimed by the '334 Patent.

Claim 1 of the '334 Patent recites, in relevant part:

1. ***A portable electronic vaporizing device comprising***:
   a base having a gas flow path conduit therein and a housing for one or more components for electrically connecting to a power source and/or controlling the device, the gas flow path conduit comprising a conduit inlet and a conduit outlet;
   a mouthpiece that is removably attachable to the base, the mouthpiece comprising:
   a mouthpiece housing comprising one or more mouthpiece walls at least partly defining a mouthpiece internal flow path through the mouthpiece housing;
   an inhalation outlet formed in a region of the one or more mouthpiece walls; and
   at least one mouthpiece inlet capable of being placed in communication with the conduit outlet of the base upon attachment of the mouthpiece to the base, to receive a flow of gas into the mouthpiece from the base; and
   an atomizer that is removably attachable to the base, the atomizer comprising:
   an atomizer inlet configured to receive a flow of gas into the atomizer;
   an atomizer housing comprising one or more atomizer housing walls that at least partially define an atomizer internal flow path therein;
   a container within the atomizer housing that is capable of holding a vaporizable product,
   ***a heating element capable of heating the vaporizable product held in the container, the heating element being configured to be electrically connected to the one or more components for electrically connecting to the power source and/or controlling the device that are housed in the base***;
   a first container inlet capable of introducing gas into the container to entrain vaporizable product;
   one or more second container outlets capable of flowing the gas having the vaporizable product entrained therein into atomizer internal flow path; and
   one or more atomizer outlets capable of receiving the flow of gas from the atomizer internal flow path, and providing the flow of gas to the conduit inlet of the base,
   wherein the flow of gas having the vaporizable product entrained therein flows from the atomizer internal flow path and through the gas flow conduit inlet of the base to the mouthpiece inlet, and along the mouthpiece internal flow path to the inhalation outlet.

1  (*Id.* at 13:56-14:35, emphasis added.)

2  **B.   The Claim Construction Arguments and Ruling**

3  Puffco filed the Complaint on March 28, 2022.  (Doc. 1.)

4  On July 22, 2022, Puffco served Defendants with its first set of Requests for

5  Production of Documents, including requests asking for "All engineering, technical

6  drawings, or similar DOCUMENTS illustrating the design of the CARTA OG

7  and/or the CARTA 2 and/or their components," communications "about the design

8  of the CARTA OG and/or the CARTA 2 or any components thereof," and

9  documents related to any "comparison of whether the VAPORIZERS contain

10  elements of the claims in the '334 PATENT."  (Declaration of Colin Dailey

11  ["Dailey Decl."], ¶ 3.)

12  On July 28, 2022, Defendants served their Rule 26(a) initial disclosures

13  identifying their relevant witnesses as including Samuel Jurist (SHO's Co-Founder

14  and CEO), John (J.R.) Quion (SHO's Direct of Product Development), and Lina

15  Zhu (the owner of the overseas manufacturer of the Carta OG and Carta 2 devices).

16  (Dailey Decl., ¶ 4.)   They also identified Defendants' relevant documents as

17  including "[d]esign and engineering documents related to the accused products[.]"

18  (*Id.*)

19  However, Defendants did not provide their first document production until

20  March 17, 2023, after the *Markman* hearing.  (Dailey Decl., ¶ 5.)

21  On December 6, 2022, the parties filed their joint claim construction brief.

22  (Doc. 51.)  As to "heating element," Defendants asserted that it should construed as

23  a means-plus-function term under 35 U.S.C. §112(f).  (*Id.*, Ex. A, p. 8.)  Puffco

24  contended that the term should be construed as "an element that heats via resistive

25  heating in order to heat the container by thermal conduction."  (*Id.*)

26  On January 10, 2023, the parties filed opening claim construction briefs.

27  (Doc. 52 [Defendants]; Doc. 53 [Puffco].)  The parties filed responsive briefs on

28  February 2, 2023.  (Doc. 57 [Defendants]; Doc. 58 [Puffco].)

4

In its opening claim construction brief, Puffco pointed out that the absence of the word "means" creates a presumption that means-plus-function treatment does not apply and that the standard for determining whether a term should be construed as a means-plus-function term "is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as *the name for the structure*" (citing *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2011) (emphasis added)) and that "[t]o determine whether a claim recites sufficient structure, 'it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and *even if the term identifies the structures by their functions*.'"  *Aquastar Pool Prods., Inc. v. Color Match Pool Fittings, Inc.*, 2018 U.S. Dist. LEXIS 199735, *10-11 (C.D. Cal. Nov. 21, 2018) (Wu, J., presiding) (emphasis added).  Puffco presented both intrinsic and extrinsic evidence, including one <u>issued</u> patent (Gross, Doc. 54-11, at 1) and five pending patent applications in the same field, demonstrating that the term "heating element" is understood by POSITAs as having a sufficiently definite meaning as the name for the structure and widely used to designate such structure.  (*See*, Doc. 53, pp. 11-12.) The issued patent, Gross, repeatedly uses the term "heating element" and mentions additional patents using "heating element" as a term of art in the industry.  (Doc. 54-11, at 1:25-29 ("U.S. Pat. No. 3,402,723 discloses a heating element and a rechargeable battery within the bowl of the pipe.").

In response, Defendants, without citing to any evidence, baldly asserted that "heating element is not a term of art that connotes structure."  (Doc. 57, p. 7:16-17.) They focused the Court on the word "element," divorced from the actual term of art, "heating element," and argued that "element" is a nonce word and "heating" merely connotes a function.  (Doc. 57, at 8.)  This was completely disingenuous, as shown below, because Defendants clearly knew that the term "heating element" is a term of art in the industry that it is widely used and understood by POSITAs and others.

In its responsive claim construction brief, Puffco pointed out that "[w]hat is important is not simply that a [heating element] is defined in terms of what it does, but that the term, as the name for the structure, has a reasonably well understood meaning in the art." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (providing multiple examples of devices that take their name from their function, including filter, brake, clamp, screwdriver, and lock, but that also have a reasonably well understood meaning in the art). (Doc. 58, p. 7.)

During the *Markman* hearing, Defendants again misleadingly argued that "heating element" is not a term of art in the industry, and represented that "it's such a vague term, and essentially, it's defined as something that heats." (Doc. 83, [Claim Construction Hr'g Tr.], 6:12-13.)

On March 3, 2023, the Court issued its claim construction ruling.  (Doc. 65.) The Court indicated that it agreed with Defendants' argument that "heating element" is not "a term of art" in the industry.  (Doc. 65, at 14.)  In its ruling, the Court seemingly discounted Puffco's evidence that "heating element" was a term of art in the industry by stating that Puffco "points <u>only</u> to other, not yet issued patent applications," without any reference to the issued patent, Gross, discussed above. (*Id*.)  The Court stated, "As Defendant points out, these applications do not establish that "heating element" is a term of art."  (*Id*.)  The Court construed the term "heating element" as a means-plus-function term under 35 U.S.C. § 112(f), identified the function as "heating the vaporizable product" and identified the corresponding structure as "a metal or ceramic plate attached to conductive elements, such as wires."  (*Id*. at 26.)

**C.    <u>After the *Markman* Hearing, New Evidence Emerged Establishing that "Heating Element" is a Common and Well-Understood Term of Art in the Vaporizing Industry</u>**

**<u>Defendants' own patent application.</u>**  On July 13, 2023, the PTO published Defendants' own patent application directed to features of the Carta 2 atomizer, in

which the named inventors (including the CEO and CTO of Defendants and two employees of Focus Hi-Tech) repeatedly identified the heating element in the Carta 2 atomizer as a "heating element." (Dailey Decl., ¶ 7, Ex. A [Jurist et al., U.S. Patent Application Publication No. 2023/0218001], Abst., ¶¶ 0072, 0073, 0075, 0077, 0121, 0122, etc., claim 1.)  Figure 17 of Defendants' patent application (below) depicts the Carta 2 atomizer and it is a mirror image of the Carta 2 atomizer shown in Defendants' document production (Dailey Decl., ¶ 8, Ex. B), which Defendants admit accurately depicts the Carta 2 container.  (Dailey Decl., ¶ 9, Ex. C [Response to RFA 22]):



Fig. 17 from application            Ex. B, SHO334-00694501

The patent application represents on its face that it was filed on January 6, 2023. (Decl., Ex. A, at 1.)

The patent application and documents related to it were in Defendants' possession and should have been produced to Puffco.  However, Defendants hid this patent application from Puffco and the Court during the claim construction phase to prevent it from negatively impacting the case, as the patent application clearly shows Defendants' admission that the Carta 2 atomizer has a heating element and they refer to it as a heating element.  In fact, Defendants still have not produced a copy to Puffco today and even lied or claimed ignorance about it at their deposition.

Specifically, on July 25, 2023, at the deposition of Defendants' 30(b)(6) representative, John Quion, Puffco asked about the existence of any pending patents related to the Carta 2, but he did not disclose this patent application:

> Q.  Do you know if there is any patent pending related to the Carta 2?
>
> A.   I don't know.

(Dailey Decl., ¶ 10, Ex. D [Transcript of Rule 30(b)(6) Deposition of John Quion], at 131:5-20.)  Mr. Quion is listed as a named inventor on the patent application.

Unfortunately, due to Defendants' concealment, Puffco only learned of this patent application after fact discovery in this case.

**Deposition Testimony and Expert Reports**.  Puffco obtained deposition testimony from Defendants' 30(b)(6) witnesses and technical experts, along with their expert reports, confirming that they, too, consider the term "heating element" as a term of art in the vaporizer industry.

For example, on July 20, 2023, Puffco deposed SHO's CEO, Samuel Jurist, in his individual capacity and as Defendants' designated 30(b)(6) witness.  Mr. Jurist repeatedly referred to the heating components in vaporizers as "heating elements":

> "Q.  So what are the components of an atomizer?
> . . . .
> [Mr. Jurist]:  There's a lot of different atomizer designs.  But, simply, you have some sort of heating element."
>
> "Q.  You have a Peak in front of you and an Oura in front of you.  What are the differences to you?
> . . . .
> [Mr. Jurist]:  Again, I'm not too familiar with either of these devices. Heating element looks different."

(Dailey Decl., ¶ 11, Ex. E [Trans. of Deposition of Samuel Jurist], at 36:2-7 and 180:24 – 181:14.)

Further, Defendants' technical expert (who Defendants contend is a POSITA) repeatedly referred to the heating component of vaporizers as "heating elements" and admitted this is a commonly used and understood term of art.  For example,

Defendants' technical expert, Mr. Hatton, stated in his report that he was "actively working in vaporizer design as of the effective filing date" of the '334 Patent and that "the types of problems encountered *in the art* as of the effective filing date" included "handling intermittent atomizer or *heating element* connections." (Dailey Decl., ¶ 12, Ex. F [Trial Exh. 195 (Report of Nicholas J. Hatton on Invalidity)], ¶ 19(i)-(k) and (n), emphasis added.)  In fact, he repeatedly referred to heating elements when discussing problems encountered in the art, including minimizing "contact resistance between electrical contacts and within crimped connections *between heating elements* (or *heating element* lead wires)," "designing, characterizing, and integrating wire-wound laminated (e.g. flexible printed circuit, alumina plate, alumina rod, alumina tube) *and other heating elements*," and integrating "components and circuitry for battery protection, battery charging, *heating element* power control, *heating element* continuity detection, [and] *heating element* temperature sensing[.]"  (*Id*.)  In describing prior art vaporizers, Mr. Hatton stated "the chamber containing the vaporizable material would be heated (*commonly by a resistive heating element in thermal contact with the chamber*)."  (*Id*. at ¶ 20) (emphasis added.)  That is essentially the description of the heating element in the '334 Patent.

Similarly, at his deposition, Mr. Hatton testified that "heating element" is a term of art commonly used and understood in the industry:

> "Q.  Can you give us some examples of a heating element?
>
> . . . .
>
> A . . . *So "heating element" is a term used in the industry.* Could refer to a heating trace or the more typically would refer to a component containing a heating trace or a bare coil.  So a *heating element might typically include some conducted element that produces heat via resistive heating*, but it could also refer to an unshielded component like a coil. […] So some examples include […] flexible printed circuit heating elements. Some examples include coils[.]

(Dailey Decl., ¶ 13, Ex. G [Trans. of Deposition of Nicholas J. Hatton] 30:2-24) (emphasis added).  In response to a question about heating traces, Mr. Hatton testified that "a heating element could be a piece of ceramic with a heating trace embedded in it," effectively describing the heating element in the Carta 2 atomizer.  (*Id.*, 31:23-25.)  Notably, each of the heating elements in the accused devices falls within Mr. Hatton's description above.

In fact, Mr. Hatton's own patents on vaporizers use "heating element" as the term for the component that provides heat.  (*See, e.g.*, **Dailey Decl., ¶ 14, Ex. H** [U.S. Patent No. 9,549,573], 1:40-47, 15:1-10, 47:41-47); **Dailey Decl., ¶ 15, Ex. I** [U.S. Patent No. 11,590,296], Abstract, 1:38-44, 2:3-7, 22:59-67, 23:1-56); **Dailey Decl, ¶ 16, Ex. J** [U.S. Patent No. 11,369,757], with more than 120 uses of "heating element" throughout columns 22-33; *see also*, claim 1 reciting "a heater configured to heat the vaporizable material"); **Dailey Decl., ¶ 17, Ex. K** [U.S. Patent No. 11,766,527], with more than 120 uses of "heating element" including in claim 1 ["a heating element configured to heat"].)

**Documents.**  As noted above, even though Puffco served its RFPs in July 2022, Defendants waited until two weeks after the *Markman* hearing to provide their initial document production.  (Dailey Decl., ¶ 5.)  Defendants produced a number of documents that were contrary to the position Defendants took in their claim construction briefs.   For example, Defendants' documents repeatedly, and in many cases, exclusively, identify the relevant components in the accused Carta OG and the Carta 2 devices as "heating elements."  Defendants produced a document describing the Carta 2 atomizer and containing technical drawings of the two heating elements in the ceramic container bottom and side walls.  (Dailey Decl., Ex. B.)  The manufacturer repeatedly refers to the two separate heating elements in the container bottom and sidewalls simply as the "heating elements." (*Id.* at pp. 69501-503.)

Thus, despite Defendants' arguments during claim construction, their documents, patent applications, deposition testimony, and expert opinions all conclusively show that "heating element" is a commonly used and understood term in the art.

In October, shortly after Puffco obtained the above-referenced discovery from Defendants' technical experts, Defendants' former counsel informed Puffco and the Court of their intent to withdraw.  The case was stayed until at least November 27, 2023, and the initial hearing date for the motion to withdraw was continued from November 27, 2023, to December 14, 2023, to allow for Defendants' former counsel to provide additional information under seal. (Doc. 91.)  Defendants' new counsel were approved by the court as attorneys of record on December 7, 2023, (Docs. 98, 99, 100), which mooted the motion to withdraw, (Doc. 101), but the litigation deadlines were not rescheduled until December 19, 2023, (Doc. 106), just before the holiday season.  In the Parties' meet-and-confer regarding the rescheduled litigation deadlines, held on December 14, 2023, Defendants' substitute counsel indicated that they required additional time to review the case files in the related actions and get up to speed.

## III.   LEGAL STANDARDS

A district court may clarify or revise its claim construction as the case progresses.  *In re Papst Licensing Digital Camera Patent Litigation*, 778 F.3d 1255, 1261 (Fed. Cir. 2015) ("[I]t is worth reiterating that a district court may (and sometimes must) revisit, alter, or supplement its claim constructions (subject to controlling appellate mandates) to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact. That determination is to be made as the case moves forward."); *Conoco, Inc. v. Energy & Env't Int'l, L.C.,* 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[D]istrict courts may engage in 'rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the

technology evolves.'"); *GE Lighting Sols., LLC v. AgiLight, Inc.,* 750 F.3d 1304, 1310 (Fed. Cir. 2014) ("This is not an uncommon occurrence—parties in patent cases frequently stipulate to a construction or the court construes a term, only to have their dispute evolve to a point where they realize that a further construction is necessary"); 1 Annotated Patent Digest § 3:15 (citing cases holding that district courts may revise claim constructions as the case progresses).

## IV.   ARGUMENT

### A.   The Newly-Obtained Evidence of Record Establishes that "Heating Element" is a Term of Art in the Vaporizing Industry and Connotes Sufficient Structure to a POSITA, and Therefore Should Not Receive Means-Plus-Function Treatment

As the Court already noted, because the term "heating element" does not use the word "means," there is a presumption that means-plus-function treatment does not apply. (Doc. 65, at 13, citing *Williamson,* 792 F.3d at 1349.)

"When a claim term lacks the word 'means,' the presumption can be overcome and § 112, para. 6 will apply *if the challenger demonstrates* that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (citation omitted, emphasis added). "The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id*., citing *Greenberg,* 91 F.3d at 1583.

"What is important is not simply that [the term] is defined in terms of what it does, but that the term, as the name for the structure, has a reasonably well understood meaning in the art." *Greenberg*, 91 F.3d at 1583. Thus, this Court has previously explained that "[t]o determine whether a claim recites sufficient structure, 'it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad

class of structures and even if the term identifies the structures by their functions.'" *Aquastar Pool Prods., Inc.*, 2018 U.S. Dist. LEXIS 199735, *10-11 (C.D. Cal. Nov. 21, 2018) (Wu, J., presiding), citing *Williamson*, 792 F.3d at 1348.

Here, as shown above (Section II.C.), the evidence of record overwhelmingly establishes that within the vaporizer industry the term "heating element" is widely considered to be a term of art designating structure.

Puffco obtained deposition testimony, including testimony from Defendants' CEO and Defendants' technical experts, each of whom used the term in "common parlance" to "designate structure" (*Aquastar*, 2018 U.S. Dist. LEXIS 199735, at *10-11), thereby providing evidence that "heating element" is a term of art in the vaporizer industry.  Mr. Jurist repeatedly referred to the atomizers in vaporizers, including the devices in this action, as having "heating elements."  (Dailey Decl., Ex. E at 36:2-6 and 180:24 – 181:14 ["There's a lot of different atomizer designs. But, simply, you have some sort of heating element."])

Mr. Hatton, who Defendants assert is a POSITA, testified that "'heating element' is a term used in the industry" and it connotes sufficient structure to a POSITA because "a heating element might typically include some conducted element that produces heat via resistive heating."  (Dailey Decl., Ex. G at 30:2-24.). Not only did Mr. Hatton testify that the term "heating element" is widely used in the art and understood by a POSITA, he also confirmed that each of the accused devices have heating elements as he, as a POSITA, understands that term.  (*Id.*)  His expert report also stated that in the pertinent art of vaporizer design "the chamber containing the vaporizable material would be heated (commonly by a resistive ***heating element*** in thermal contact with the chamber)," and he repeatedly used the term "heating element" when describing various problems that POSITAs encounter in vaporizer design.   (Dailey Decl., Ex. F, at ¶ 20, emphasis added.)

In fact, Mr. Hatton's own <u>issued</u> patents related to vaporizers use "heating element" as the term for the component that provides heat.  (*See, e.g.*, Dailey Decl.,

¶ Ex. H, [U.S. Patent No. 9,549,573], 1:40-47, 15:1-10, 47:41-47.); Dailey Decl., Ex. I [U.S. Patent No. 11,590,296], 1:38-44, 2:3-7, 22:59-67, 23:1-56.); Dailey Decl., Ex. J; Dailey Decl., Ex. K.)   This is consistent with the issued patent, Gross, that Puffco submitted with its claim construction briefs and which repeatedly uses the term "heating element" in relation to the structure that heats the product, as discussed above.

       In addition, Defendants' own documents repeatedly refer to the relevant component in the accused Carta OG and Carta 2 devices as simply the "heating element."  Further, in Defendants' own patent application directed to features of the Carta 2 atomizer (which Defendants hid from Puffco and never produced), the named inventors (including the CEO and CTO of Defendants and two employees of Focus Hi-Tech) repeatedly identified the heating component of the Carta 2 as a "heating element."  (Dailey Decl., Ex. A [Jurist et al., U.S. Patent Application Publication No. 2023/0218001], Abst., ¶¶ 0072, 0073, 0075, 0076, 0077, etc., claim 1.)   Thus, Defendants cannot dispute, and effectively have conceded, that the term "heating element" is a commonly used term of art in the industry and connotes sufficient structure to a POSITA.

       In addition to the indisputable fact that "heating element" is a term of art and commonly used and understood by POSITAs, as shown above, the claims of the '334 Patent refer to "heating element" in a manner that connotes sufficient structure to a POSITA because the claims themselves include additional structural requirements on the heating element.  This includes the fact that the heating element is located in the atomizer (as opposed to the base), the heating element is in contact with the container holding the vaporizable product (to allow for resistive heating by conduction), and the heating element must be able to be connected to electrical power from the base.  ('334 Patent, at Claim 1, Col. 14:7-22, describing the atomizer requirements for the invention:  "an atomizer that is removably attachable to the base, the atomizer comprising: […] a heating element capable of heating the

vaporizable product held in the container, the heating element being configured to be electrically connected to the one or more components for electrically connecting to the power source and/or controlling the device that are housed in the base"). These additional structural requirements in the claims themselves make means-plus-function treatment improper.  *See, e.g., Delta T LLC v. MacroAir Techs., Inc.*, No. EDCV 20-728-GW-JPRX, 2021 WL 3721455, at *17 (C.D. Cal. Mar. 29, 2021) ("The Court agrees with Plaintiff that "humidity sensor is configured to sense relative humidity" contains sufficient structure. […] Claim 1 recites that the 'humidity sensor is in communication with the motor controller,' which is in turn in communication with the motor, upper temperature sensor, and lower temperature sensor. '041 Patent, Claim 1. The use of the term 'humidity sensor' in connection with other structural parts of claim suggest that the term itself is structural. Additionally, as stated above, the phrase "configured to" alone is insufficient to show that "humidity sensor" is devoid of structure.").  The recitation of "heating element" in claim 1 of the '334 Patent is strikingly similar to the language in the '041 Patent.  Just as the humidity sensor was claimed to be in communication with the motor controller, here the heating element is claimed to be "configured to be electrically connected to" components in the base.  Thus, not only is "heating element" a well-known term of art in the vaporizer industry, its use in the claims of the patent-in-issue are not "devoid of structure" (*Delta T LLC,* 2021 WL 3721455, at *17) but rather provide sufficient structure to be understood by a POSITA reading the claims, rendering means-plus-function treatment inappropriate.

Thus, the new evidence obtained after the *Markman* hearing, and in some cases not until the close of expert discovery, establishes that not only is "heating element" a term of art designating a particular class of structure, Defendants, their manufacturing partners, and their technical experts, have consistently used "heating element" as a term of art referring to the broad class of heating component structures present in Defendants' Carta OG and Carta 2 devices.  As such, means-plus-function

treatment is not appropriate.  *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1348, (Fed. Cir. 2009) (relying in part on how accused infringer used disputed claim term to support construction); *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1375–76, (Fed. Cir. 2004) (ruling that district court erred in refusing to consider a patentee's extrinsic evidence of how the accused infringer used a disputed claim term).

This Court has previously held that a claim recites sufficient structure to avoid means-plus-function construction so long as the term is understood as having a sufficiently definite meaning as a name for the structure, "even if [it's] a name for a broad class of structures, and ***even if the term identifies the structures by their functions***."  *Aquastar*, 2018 U.S. Dist. LEXIS 199735, at *10-11 (emphasis added). The same rationale applies here to the term "heating element" for the reasons discussed above.

Thus, Puffco respectfully requests the Court construe "heating element," not as a means-plus-function term, but, instead, as Puffco proposed, "an element that heats via resistive heating in order to heat the container by thermal conduction." (*see*, Doc. 53 at 8-13; Doc. 58 at 6-9; Doc. 83 at 3 – 9, referring to Puffco's proposed construction of "heating element").

**B.**     **The Court May Modify the Claim Construction of "Heating Element" At Any Stage of the Litigation, Particularly Here When Presented with New Evidence**

As shown above, the Federal Circuit has repeatedly emphasized that a district court may (and sometimes must) clarify or revise its claim construction as the case progresses.  *In re Papst Licensing Digital Camera Patent Litigation*, 778 F.3d at 1261 ("[I]t is worth reiterating that a district court may (and sometimes must) revisit, alter, or supplement its claim constructions (subject to controlling appellate mandates) to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact. That

determination is to be made as the case moves forward."); *Conoco, Inc.,* 460 F.3d at 1359 ("[D]istrict courts may engage in 'rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.'"); *GE Lighting Sols.,* 750 F.3d at 1310 ("This is not an uncommon occurrence").  Thus, the Court has discretion to revisit its claim construction at any time, and the Court does not need to analyze this motion as a motion for reconsideration or attach other timing or procedural limitations to it.

However, this motion also satisfies any requirements for a motion for reconsideration, if necessary.  Under Federal Rule of Civil Procedure 59(e), reconsideration of a prior order is proper where the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.*; *see also School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  The Court retains discretion in determining whether to grant a motion for reconsideration. *See Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).  And, in the specific context of claim construction, a motion for reconsideration may be raised at any stage of the case. *See, e.g.*, *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002).  A motion for reconsideration of a previous order is appropriate, for instance, "if new developments would affect the outcome of the motion" resulting in the prior order. *Kruse Tech. P'ship v. DMAX, Ltd.*, 2010 WL 11519252, at *1 (C.D. Cal. Sept. 21, 2010).

Local Rule 7-18 provides, in relevant part:

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of . . . (b) the emergence of new material facts or a change of law occurring after the Order was entered . . . . No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion. Absent good cause shown, any motion for reconsideration must be filed no

later than 14 days after entry of the Order that is the subject of the motion or application.

Therefore, reconsideration is appropriate where "the Court is presented with newly-discovered evidence." *Homeland Housewares, LLC v. Sorensen Rsch. & Dev. Tr.*, No. CV 11-3720-GW(JEMX), 2012 WL 12886826, at *2 (C.D. Cal. Aug. 23, 2012), *aff'd sub nom. Homeland Housewares, LLC v. Sorensen Rsch.*, 581 F. App'x 869 (Fed. Cir. 2014); *see also Monolithic Power Sys. Inc. v. O2 Micro Intl. Ltd.*, C 04-2000 CW, 2007 BL 66044, at *3 (N.D. Cal. Mar. 15, 2007) (granting motion to reconsider claim construction order); *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.*, 96 F. Supp. 2d 1006 (N.D. Cal. 2000) (granting motion to reconsider summary judgment order based on new evidence). Additionally, while repetition of arguments is not proper on reconsideration, courts will consider such arguments "when there are new facts or law not considered by the Court" in the underlying order. *Ernie Ball, Inc. v. Earvana, LLC*, No. 5:06-cv-00384-FMC-OPx, 2009 WL 10673153, at *2 (C.D. Cal. Sept. 16, 2009).

As to the 14-day requirement under L.R. 7-18, the "good cause" inquiry focuses on the timeliness of filing of the motion for reconsideration, considered in the context of the basis for which reconsideration is sought. Where the motion is based on the emergence of new material facts or a change in law, the relevant focus is on the time from the discovery of the new material facts or issuance of the change in law. *Space Systems/Loral, Inc. v. Lockheed Martin Corp.*, No. C 96-03418 SI, 2006 WL 2684272 (N.D. Cal. Sept. 19, 2006) (permitting delay of multiple years where there was an intervening change in law); *see also Shimoyama v. City of Philadelphia*, 2008 WL 2412969, at *3 (E.D. Pa. June 9, 2008) (excusing plaintiff's delay of more than four months where it was due to the defendant's untimely production of requested evidence).

Here, Puffco acted diligently and was unable to bring this Motion until now in light of (i) Defendants' late disclosure of relevant documents and information –

which delayed receipt of information necessary to bring this Motion through late-September 2023, when the Carta OG manufacturing documents were first produced; (ii) the August 30 and September 27, 2023 disclosure of Defendants' technical experts' invalidity and non-infringement reports, respectively, delaying discovery of their opinions, patents, and other documents having a bearing on the claim construction of heating element, (iii) the fact that the depositions of Defendants' technical experts uncovered additional new evidence through mid-October; (iii) the protracted process surrounding the substitution of Defendants' counsel, which resulted in a formal stay of proceedings from mid-October until at least November 27, 2023 (*See* Doc. 85), and otherwise delayed proceedings through the end of 2023, (iv) the fact that Defendants did not have new counsel appear in the case until mid-December, who needed additional time to get up to speed on this lawsuit and the related lawsuit, and (v) the fact that the parties stipulated to filing motions related to dispositive issues and experts on February 8, 2024.

As the Court issued its *Markman* ruling on March 3, 2023, that is the relevant date to determine, in the first instance, whether the newly raised documents were available to Puffco to use in the claim construction phase. *Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (to succeed on a motion for reconsideration predicated on newly emerging evidence, the moving party must show "that this evidence was newly discovered or unknown to [them]" and "that [they] could not with reasonable diligence have discovered and produced such evidence").

A review of the timeline of production, publication, and otherwise obtention of the newly emerging document and testimony confirms that the evidence remained unknown to Puffco until after March 3, 2023:

- Patent application for aspects of the Carta 2 device, never produced by Defendants, but published publicly by the USPTO on July 13, 2023;

- Deposition Testimony from Defendants' CEO Samuel Jurist, deposition held on <u>July 20, 2023</u>;
- Carta OG documents prepared by the manufacturer of the Carta OG (Focus Hi-Tech Co., Limited), made available on <u>September 27, 2023</u>; and
- Report and Deposition Testimony from Defendants' technical expert, Nicholas J. Hatton, and deposition held on <u>October 12, 2023</u>.

Further, these documents were not and could not have been discovered, obtained, or produced by Puffco prior to the entry of the claim construction order on March 3, 2023.  Importantly, Puffco exercised reasonable diligence in seeking to obtain this information prior to March 3, 2023.  On July 7, 2022, Puffco served discovery requests on Defendants seeking, among other documents, production of all documents and communications concerning the manufacturing of the Carta OG and Carta 2, as well as all engineering, technical drawings, and similar documents illustrating the design of these devices.  Defendant, however, delayed in producing relevant documents for the Carta 2 until beginning on March 17, 2023, and, for the Carta OG, until September 27, 2023.  Moreover, the parties did not provide their expert reports or conduct expert depositions until after the close of fact discovery.

This point is underscored by the fact that even when asked specifically about the existence of pending patents related to the Carta 2 on July 25, 2023, Defendants' corporate representative, J.R. Quion, testified that he had no knowledge of any such patents.  (Dailey Decl., Ex. D at 131:5-21.)  Mr. Quion is listed as a named inventor on the patent application.

Therefore, it was Defendants withholding of material documents, not Puffco's diligence (and, indeed, in spite of Puffco's diligence) that is the reason why Puffco was unable to discover, obtain, and produce the newly raised documentary evidence.

With respect to Defendants' technical experts, pursuant to the scheduling order in this case, they did not serve their initial expert reports and opinions until August 30, 2023 and their rebuttal (non-infringement) reports and opinions until

September 27, 2023, and their depositions did not take place until October 11 (Mr. Kodama) and October 12 (Mr. Hatton).  Defendants' counsel sought to withdraw soon thereafter, and the case was styed from October 24 to at least November 27, 2023.  Puffco, thus, was not on notice of who Defendants' experts were, let alone in a position to depose the experts on their opinion regarding whether "heating element" was a term of art, prior to March 3, 2023.

Through a combination of Defendants delaying production of documents and information responsive to Puffco's discovery requests – and, indeed, failing to produce certain responsive documents at all – as well as the date of disclosure of technical experts, the newly raised evidence was unknown to Puffco, who, despite its reasonable diligence, was unable to discover, obtain, or produce such evidence before the Court issued its *Markman* ruling on March 3, 2023.

Thus, for all the reasons stated herein, good cause exists to consider and grant this motion, regardless of whether it is considered a motion for reconsideration under L.R. 7-18 or any other type of motion for relief.

## V.  <u>CONCLUSION</u>

For the reasons described above, Puffco respectfully requests the Court modify its construction of "heating element" to "an element that heats via resistive heating in order to heat the container by thermal conduction."

Dated:  February 8, 2024          **BRYAN CAVE LEIGHTON PAISNER LLP**

By:   */s/ Colin D. Dailey*
          Colin D. Dailey
Attorneys for Plaintiff Puff Corp.

**L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for Plaintiff Puff Corp., certifies that this brief contains 6,762 words, which complies with the word limit of L.R. 11-6.1.  In making this certification, the undersigned has relied on the word count of the word-processing system used to prepare the document.

Dated:  February 8, 2024          **BRYAN CAVE LEIGHTON PAISNER LLP**

By:  */s/ Colin D. Dailey*
           Colin D. Dailey
Attorneys for Plaintiff Puff Corp.