JAMESON J. PASEK (pro hac vice)
jameson@caldwelllaw.com
J. TANNER MURPHY (pro hac vice)
tanner@caldwelllaw.com
**CALDWELL INTELLECTUAL PROPERTY LAW LLC**
200 Clarendon Street, 59th Floor
Boston, Massachusetts 02116
Telephone: (857) 990-4914

SCOTT M. MALZAHN (SBN 229204)
smalzahn@waymakerlaw.com
SAM S. MEEHAN (SBN 307934)
 smeehan@waymakerlaw.com
**WAYMAKER LLP**
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

*Attorneys for Defendants and
Counterclaimants SHO Products, LLC
and MasterMinded, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PUFF CORP., a Delaware corporation,<br><br>   *Plaintiff,*<br><br> v.<br><br>SHO PRODUCTS, LLC, a New York limited liability company and MASTERMINDED, INC., a California corporation,<br><br>   *Defendants.*<br>_____<br><br>AND RELATED COUNTERCLAIM | Case No. 2:22-cv-02008-GW-KS<br><br>**SHO PRODUCTS, LLC AND MASTERMINDED, INC.'S OPPOSITION TO PUFF CORP.'S MOTION TO STRIKE OPINIONS OF DEFENDANTS' DAMAGES EXPERT SHELLY IRVINE**<br><br>Judge: Hon. George H. Wu<br>Date:  April 4, 2024<br>Time:  8:30 AM<br>Crtrm.: 9D |

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION..................................................................................1

II.     RELEVANT BACKGROUND .............................................................3

    A.  Puffco's Background Section Is Generally Irrelevant to Irvine's Report and Functions as a Recitation of Praise ........................................3

    B.  Shelly Irvine's Background........................................................4

    C.  Puffco Inaccurately Assesses Irvine's Opinions ...........................5

    D.  David Francom's Damages Report .............................................6

III.    LEGAL STANDARD ...........................................................................6

    A.  Daubert and Federal Rule of Civil Procedure 702 .......................6

    B.  Federal Rules of Civil Procedure 26 and 37 ...............................7

IV.     ARGUMENT ........................................................................................8

    A.  Francom Failed to Use Complete Information Resulting in Irvine's Use of a Costed BOM from Another Data Source ...................................8

    B.  Irvine's BOM Analysis Methodology Is Regularly Accepted by the Federal Circuit............................................................................12

    C.  This Circuit and the Federal Circuit Allows for Potential Non-Infringing Substitutes ................................................................................15

    D.  Irvine Is a Damages Expert and Does Not Claim to Be an Industry Expert ......................................................................................16

V.      CONCLUSION ..................................................................................17

DEFENDANTS' OPPOSITION TO PUFF CORP.'S MOTION TO STRIKE OPINIONS OF DEFENDANTS' DAMAGES EXPERT SHELLY IRVINE

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Andrews v. Plains All Am. Pipeline, L.P.,*
 2019 WL 6647928, (C.D. Cal. Nov. 22, 2019) ........................................10

4

5

*AstraZeneca AB v. Apotex Corp.,*
 782 F.3d 1324, 1338 (Fed. Cir. 2015) ...................................................14

6

*Badalamenti v. Dunham's, Inc.,*
 896 F.2d 1359, 1363 (Fed. Cir. 1990) ....................................................8

7

8

*Daubert v. Merrell Dow Pharms., Inc.,*
 509 U.S. 579 (1993) ...........................................................6, 7, 12

9

*EcoServices, LLC v. Certified Aviation Servs., LLC,*
 WL 11583148, (C.D. Cal. May 7, 2019) ..................................................12

10

11

*Enovsys LLC v. AT&T Mobility LLC,*
 2015 WL 10383057, (C.D. Cal. Aug. 10, 2015) ...........................................12

12

*Ericsson. Inc. v. D–Link Sys.. Inc..*
 773 F.3d 1201, 1226 (Fed. Cir. 2014) ...................................................12

13

14

*Grain Processing Corp. v. Am. Maize-Prod. Co.,*
 185 F.3d 1341, 1353 (Fed. Cir. 1999) ...................................................15

15

*Gyromat Corp. v. Champion Spark Plug Co.,*
 735 F.2d 549, 552 (Fed. Cir. 1984) .....................................................15

16

17

*Ingenco Holdings. LLC v. Ace Am. Ins. Co.,*
 921 F.3d 803, 821 (9th Cir. 2019) ........................................................8

18

*Jarrow Formulas, Inc. v. Now Health Grp., Inc.,*
 No. 2012 WL 3186576, (C.D. Cal. Aug. 2, 2012) .........................................10

19

20

*King Instrument Corp. v. Otari Corp.,*
 767 F.2d 853, 863 (Fed. Cir. 1985) .....................................................15

21

*Lanard Toys Ltd. v. Novelty, Inc.,*
 375 Fed. App'x 705, 713 (9th Cir. 2010) ..................................................8

22

23

*Nichia Corp. v. Feit Elec. Co., Inc.,*
 2022 WL 17222250, (C.D. Cal. Oct. 12, 2022) ...........................................15

24

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.,*
 2019 WL 8138163 (C.D. Cal. Nov. 20, 2019) ............................................12

25

26

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.,*
 35 F.4th 1367, 1379 (Fed. Cir. 2022) ...................................................14

27

*Syneron Med. Ltd. v. Invasix, Inc.,*
 2018 WL 4696969, (C.D. Cal. Aug. 27, 2018) ....................................7, 10, 11

28

DEFENDANTS' OPPOSITION TO PUFF CORP.'S MOTION TO STRIKE OPINIONS OF DEFENDANTS'
DAMAGES EXPERT SHELLY IRVINE

*TWM Mfg. Co. v. Dura Corp.*,
  789 F.2d 895, 899 (Fed. Cir. 1986) .......................................................... 6

*Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*,
  2012 WL 12930456, (C.D. Cal. Nov. 9, 2012) ...................................... 10

**Rules**

Fed. R. Civ. P. 26(a)(1) (A)(iii) ...................................................................... 7

Fed. R. Civ. P. 26(a)(2)(D)(ii) ........................................................................ 7

Fed. R. Civ. P. 37(c)(1)) ................................................................................. 8

Federal Rule of Evidence 702 .......................................................................... 7

Rule 37(d)(1)(A)(ii) ......................................................................................... 8

DEFENDANTS' OPPOSITION TO PUFF CORP.'S MOTION TO STRIKE OPINIONS OF DEFENDANTS'
DAMAGES EXPERT SHELLY IRVINE

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      Puff Corp.'s ("Puffco's") Motion to Strike Opinions from Defendants'

4  Damages Expert Shelly Irvine (the "Motion") should be denied. First, Defendants

5  SHO Products, LLC's and Masterminded, Inc.'s ("SHO's") damages expert, Shelly

6  Irvine ("Irvine"), relied on data points that were necessary to conduct a proper

7  apportionment analysis, as required by federal circuit law because Puffco's expert,

8  Dr. David B. Francom ("Francom"), used incomplete information. Namely, Francom

9  claims to have apportioned using manufacturer cost lists, invoices and inventory lists

10  that show the cost of the kit components. (Dkt. 107-2 at ¶ 41). These cost documents

11  are not granular or reliable enough to do a proper apportionment. Specifically,

12  Francom did not account for a comprehensive Costed Bill of Materials ("BOM")

13  identifying component parts of U.S. Patent 10,517,334 ("the '334 Patent").

14      In response to Francom's damages report, therefore, Irvine relies on the

15  Declaration of Lina Zhu (the "Zhu Declaration"), the Chief Executive Officer of

16  Focus Hi-Tech Co. Ltd. ("Focus Hi-Tech"); Focus-Hi-Tech is the manufacture of

17  SHO's Carta, Carta 2 and Oura (the "Accused Products). The Zhu Declaration

18  accounts for a Costed BOM allowing Irvine to aggregate the value of the smallest

19  salable unit, as experts are required to do. Thus, Irvine's reliance on Zhu was

20  substantially justified because she would not have otherwise had the necessary data

21  to properly apportion under Federal Circuit law. As such, Puffco's argument is

22  misplaced by focusing on the responsiveness of the Zhu Declaration to its document

23  requests. The issue is not whether the Zhu Declaration is responsive to Puffco's

24  requests. The issue is whether use of the Zhu Declaration is substantially justified or

25  harmless. In addition to being substantially justified, disclosure of the Zhu

26  Declaration is harmless because Irvine's report was disclosed before the end of the

27  expert discovery, *before her deposition*, and approximately ten months before the trial

28  date.

In conjunction with using the Costed BOM, moreover, Irvine appropriately consulted with SHO's technical experts to identify the components of this multi-component product that are attributable to the claimed infringing features. Irvine's analysis appropriately accounts for the incremental improvements of the '334 patent. Irvine even provides options for the trier of fact that rest on "specific configuration[s]" and "application[s]." Contrary to what Puffco claims, this is just one step in a comprehensive analysis to determine the value contribution of the Asserted Patent under the hypothetical negotiation. To be clear, Irvine does not argue that BOM cost apportionment equals value. Puffco conflates Irvine's apportionment rate by ignoring that her hypothetical royalty is also based on, among other things, the profit that SHO makes on the *entirety* of the Accused Products. *See* the Damages Report of Shelly Irvine, **Exhibit B**, ¶ 154 ("Dkt. 107-3"). Irvine then specifically assesses the profitability reflective of the claimed inventions of the '334 Patent. *Id*. at ¶ 154. After a thorough assessment of the *Georgia-Pacific* factors and the Accused Products' profit margins, Irvine applies the apportionment rate to the profit margin data point: the resulting figure, therefore, equals the (alleged) value that "can be *attributed to the specific functionality* . . . of the invention/incremental improvement over prior art." (Dkt. 107-3 at ¶156). Notably, Irvine does not state that the apportionment rate is the "value" attributable to the specific functionality, as Puffco wrongly suggests.

Next, SHO already maintains that the Carta 2 is a non-infringing alternative to the '334 Patent. (Dkt. 107-3 at ¶ 119). Thus, the expiration date of the '334 Patent acts as an incentive for SHO to invest in design alternatives. *Id*. If this Court finds that the Carta 2 does not infringe, SHO has no incentive to take a license for the Carta OG (which it no longer sells). *Id*. As such, SHO is only incentivized to enter into a hypothetical license if doing so would be less expensive than developing a non-infringing alternative. *Id*. at ¶ 119. Therefore, Irvine assesses the Carta 2 as a substitute, while again distinguishing between the patented and non-patented features, and third-party prior art. Furthermore, Puffco fails to fully assess the *Georgia-Pacific*

DEFENDANTS' OPPOSITION TO PUFF CORP.'S MOTION TO STRIKE OPINIONS OF DEFENDANTS' DAMAGES EXPERT SHELLY IRVINE

factors, particularly Factors 9 and 10—i.e., the utility and advantages of the patented property over old modes and devices, whether or not there are noninfringing substitutes available. Nevertheless, whether the Carta 2 atomizer constitutes a non-infringing alternative is a question to be resolved by the Court on summary judgment or by a jury at trial. *Id*. at ¶ 162. The issue of determining a non-infringing alternative is not appropriate here.

Lastly, Irvine is not a technical or industry expert and does not purport to be. Any reference by Irvine to the marketplace is for context and refers to either the Francom report, SHO's technical experts, publicly available articles and information, or case law. Indeed, Irvine uses phrases like "footprint in the marketplace" and "improvements over prior art" which are accompanied by a footnote (citing to other sources). In short, Irvine does not opine on the vaporizer market, nor does she intend to at trial. Puffco's efforts to preclude Irvine's opinions as an industry or marketplace experts are misplaced.

For these reasons, and the reasons stated below, SHO requests that the Court deny Puffco's Motion.

## II.    RELEVANT BACKGROUND

### A.    Puffco's Background Section Is Generally Irrelevant to Irvine's Report and Functions as a Recitation of Praise

Puffco restates industry praise and reasserts infringement. Puffco directs the Court's attention to the market before the '334 Patent; coverage of Puffco products by sources such as "High Times" and "Weed Maps"; supposed advantages of the '334 Patent over prior art; and an inaccurate overview of the Accused Products. Puffco spends approximately seven pages restating claim limitations, reciting the supposed "novelty" of a removable atomizer and mouthpiece, the uniqueness of an air-flow path, and asserting that SHO should take a license for selling replacement parts. (Pl.'s Mot. at pp. 2-9). Puffco's recitation is wholly unrelated to whether Irvine's opinions should be stricken, let alone the methodology she applies.

### B.    Shelly Irvine's Background

By way of background, Irvine is the Managing Director in the San Francisco office of Ocean Tomo, an intellectual property merchant bank. (Dkt. 107-3 at ¶ 4.) Irvine has over twenty years of experience consulting intellectual property matters in various industries including technology, life sciences, cloud computing, manufacturing and several others. *Id*. at Appendix A. Irvine focuses exclusively on intellectual property as it relates to valuations, financials, economics, and accounting and consultancy, including the valuation of patents, trade secrets, trademarks, and copyrights. *Id*. Irvine has testified numerous times on intellectual property damages including with respect to apportionment and the analytical approach. *Id*. Irvine regularly provides expert opinions on reasonable royalty rates under the hypothetical negotiation framework including *Georgia-Pacific* factors and structuring licensing terms. *Id*.

Moreover, Irvine's case work includes testifying in at least fifteen federal court matters including the following cases in this circuit: *Pelican Int'l, Inc. v. Hobie Cat Co., et al.*, U.S. District Court for the Southern District of California, Case No. 20-cv-2390-BAS; *Cellspin Soft v. Nike Inc.*, U.S. District Court for the Northern District of California, Southern Division, Case No. 3:17-cv-05931; *Looksmart Grp., Inc. v. Microsoft Corp.*, U.S. District Court for the Northern District of California, Case No. 3:17-cv-4709-JST; *SPEX Techs., Inc. v. Kingston Tech. Corp.*, U.S. District Court for the Central District of California, Case No. 8:16-cv-01790; *Sentius Int'l LLC v. Microsoft Corp.*, U.S. District Court for the Northern District of California, Case No. 5:13-cv-825 (PSG);  *Spark Networks USA v. Humor Rainbow, Inc. and Zoosk, Inc.*, U.S. District Court for the Central District of California, Western Division, Case No. 2:11-cv-01430 JHN (JEM); and *Vertical Doors, Inc. v. JT Bonn, Inc.*, U.S. District Court for the Central District of California, Case No. 8:05-cv-00905 JVS, none of which excluded Irvine's reports or testimony. *Id*.

DEFENDANTS' OPPOSITION TO PUFF CORP.'S MOTION TO STRIKE OPINIONS OF DEFENDANTS'
DAMAGES EXPERT SHELLY IRVINE

### C.    Puffco Inaccurately Assesses Irvine's Opinions

Puffco's statement that "Irvine agreed with much of Dr. Francom's analysis" is inaccurate. (Pl's. Mot. at p. 12). To support this false assertion, Puffco cherry-picks Irvine's deposition testimony. For instance, Puffco quotes Irvine agreeing with "numbers" (i.e., financial data) reflected in Francom's report, including SHO's profit margins. (Pl's Mot. at p. 12). Of course, Irvine may agree with the accuracy of financial information referenced by Francom without agreeing with his analysis. Indeed, Irvine makes clear that she does not agree with Francom's report: Irvine states, "I disagree with Dr. Francom's assessment damages in a number of material ways" including because Francom's "royalty opinions are [fundamentally] flawed." (Dkt. 107-3 at ¶ 5). Ironically, Puffco seeks to exclude Irvine based on a methodology that Francom propounds. The methodology starts with a clamed apportionment by dividing the total of the patented components, by the total of all kit components. (Dkt. 107-2 at ¶ 45). Irvine used a similar methodology for apportionment except using (1) reliable comprehensive component information; (2) technical expert input; and (3) apportionment to the footprint of the invention (as opposed to Francom who used the entire device as the royalty base).

Next, Puffco cites the experts' categorization of the thirteen *Georgia-Pacific* factors which are separate from the experts' underlying methodologies. Puffco nevertheless failed to point out that the experts disagreed regarding several *Georgia-Pacific* factors: Irvine and Francom have different responses for at least factors 3, 6, 7, 8, 9, 10, 11, and 13. *Id*. Puffco nevertheless claims that Irvine and Francom agreed on factors 4, 7 and 11. However, Francom labels factors 4, 7, and 11 as an "Increase," "Increase", and "Substantial Increase", respectively, compared to Irvine's labeling including, "Slight Upward," "Neutral" and "Slight Upward." *Id*. Their opinions are not the same—"increase" does not mean "neutral", and a substantial increase is not a slight increase. Moreover, agreeing on the fundamental framework of a hypothetical negotiation is distinct from agreeing on methodologies. Therefore, Puffco's argument

that the experts differed in only "one significant fashion" regarding BOM-costs is disingenuous. Puffco ignores Irvine's critique of Francom's failure to apportion, violation of the entire market value rule, and violation of Federal Circuit's comparability doctrine including inapplicable benchmarks. Puffco's comparison of the *Georgia-Pacific* charts is a red herring.

### D.    David Francom's Damages Report

Puffco argues that Francom's report is "conservative" because his royalty rate percentage was below two of the excess gross profit margin datapoints. (Pl.'s Mot., p. 11). Puffco's position misconstrues the fact that Francom failed to use an appropriate method in the first place, compared dissimilar technologies, and as such, could not have derived a "conservative" royalty rate. Puffco nevertheless argues that Francom properly apportioned by: first, referring broadly to the *Georgia-Pacific* analysis, and second, by apportioning the Accused Product kits down to "the smallest patent practicing unit—**the device**". (Pl.'s Mot., p. 11) (emphasis added). Puffco is essentially admitting that Francom failed to follow Federal Circuit law and accounted for the entire device instead of distinguishing device components. Francom also compares dissimilar products in violation of the analytical approach. Francom should have compared profits on products with infringing features to similar noninfringing products to determine a profitability benchmark. *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986). Lastly, Francom accounts for the entire device but at no point argues the entire market value rule. By claiming that Francom's rate is conservative, and by applying *AstraZeneca* matter (explained further below), Puffco should lose all credibility on these issues.

## III.    LEGAL STANDARD

### A.    Daubert and Federal Rule of Civil Procedure 702

The admissibility of expert reports is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

First, pursuant to Rule 702, an expert may testify in the form of an opinion if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015) (citing Federal Rule of Evidence 702). To be admissible under Rule 702, moreover, the expert's testimony must be both relevant and reliable. *Syneron Med. Ltd. v. Invasix, Inc.*, 2018 WL 4696969, at *2 (C.D. Cal. Aug. 27, 2018).

In *Daubert,* the Supreme Court set out the requirements for admissibility of expert testimony. *Daubert* 509 U.S. at 579. The Supreme Court stated that the trial judge plays a "gatekeeping role," whereby "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93. The Supreme Court emphasized that the focus "*must be solely on principles and methodology*, not on the conclusions that they generate." *Id.* at 595 (emphasis added). Under *Daubert*, the admissibility assessment includes: (1) whether the methodology is scientific knowledge that will assist the trier of fact; (2) whether the methodology has been tested; (3) whether the methodology has been published in peer-reviewed journals; (4) whether there is a known, potential rate of error; and (5) whether the methodology is generally accepted. *Id.* at 591–95.

## B.    Federal Rules of Civil Procedure 26 and 37

Rule 26(a)(1) requires a party to disclose a damages computation based on information "then reasonably available to it" and to identify for the opposing party the underlying evidence that supports the computation. Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(a)(2), moreover, permits the admission of rebuttal expert testimony that is intended "contradict or rebut evidence on the same subject matter identified" by an initial expert witness. Fed. R. Civ. P. 26(a)(2)(D)(ii).

Rule 37 only applies where a party "fails to serve its answers, objections, or written response." Rule 37(d)(1)(A)(ii). The Federal Circuit has highlighted two prevailing interpretations of what constitutes a failure to respond: (1) "Rule 37(d) does not authorize an award of sanctions *unless there is a total failure to respond* to the discovery requests"; and (2) courts only award sanctions where the responses are "*evasive or misleading . . .* tantamount to no response at all." *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1363 (Fed. Cir. 1990) (emphasis added). Therefore, courts deny Rule 37 motions where disclosures in the expert reports are substantially justified or harmless. *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 821 (9th Cir. 2019) (quoting Fed. R. Civ. P. 37(c)(1)). In assessing substantial justification and harmlessness, courts may consider: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010) (internal citation omitted).

## IV.    ARGUMENT

### A.    Francom Failed to Use Complete Information Resulting in Irvine's Use of a Costed BOM from Another Data Source

It was Francom that identified component cost information as relevant to an apportionment analysis. (Dkt. 107-2 at ¶ 41) ("to apportion out the accused product from the entire kit, I [Francom] rely on manufacture cost lists, invoices, inventory lists and other documents that show the costs of the kit components"). As Francom was focused on costs to derive what he calls "apportionment" (albeit improper under the Federal Circuit), as a rebuttal damages expert, it was incumbent on Irvine to identify and provide the trier of fact with accurate information. Irvine was substantially justified in relying on the Zhu Declaration because Francom's BOM-cost analysis failed to account for the very information required to perform a proper apportionment. Specifically, Francom did not include a comprehensive Costed BOM

(a complete list of material costs) including the cost of the components in question. As evidenced below, Francom's "Price List" ignores critical information identified in Irvine's "Total Components BOM":

| Francom's Carta Price List | Irvine's "Total Components BOM" |
|---|---|
| Carta Price List<br>Carta Kit<br>Carta Base<br>V2 Atty<br>V3 Atty<br>Dry Herb Atty<br>Quartz Insert<br>Titanium Insert<br>SiC insert<br>Atty Repair Kit<br>Glass Top<br>Carb Cap<br>Battery<br>Q-Tips<br>Tether<br>Dab Tool<br>Silicon Jar<br>Carry Case<br>USB-C Cable | **Part No.  Description**<br>3  Atomizer Upper O-Ring<br>4  Atomizer Ceramic Lid<br>5  Concentrate Atomizer Outer Shell<br>6  Ceramic Heating Bowl (1)<br>6  Ceramic Heating Bowl (2)<br>7  Ceramic Bowl Connector<br>8  Atomizer Base<br>9  Atomizer Base Ring<br>10  Atomizer Insulator<br>11  Signal Connection Ring<br>12  Electrode<br>15  Glass Top Base<br>26  Pop-Pin<br>27  Positive Connecting Ring<br>28  Signal Connecting Ring<br>29  Insulator<br>30  Atomizer Connecting Base<br>31  Lock Ring<br><br>Total Components BOM Cost |

*Compare* the Expert Report of Dr. David B. Francom (Dkt. 107-2 at ¶ 42) (a purchase list with no atomizer costs) *with* Dkt. 107-3 at ¶ 72 (identifying the "**Atomizer Upper O-Ring**", "**Atomizer Ceramic Lid**", "**Atomizer Base**", "**Atomizer Base Ring**", "**Atomizer Insulator**", and "**Atomizer Connecting Base**"). The Zhu Declaration became fundamental to Irvine's report to assess all individual line item BOMs. By the contrary, Francom considers the device in its entirety, which is clear from his opinion: "[t]o apportion out the accused product from the entire kit…", and therefore, what remains is the accused product in its entirety. (Dkt. 107-2 at ¶ 41). Francom's failure to follow the Federal Circuit standard—*i.e.*, account for only the patented

components—goes hand-in-hand with his position: the smallest salable unit is supposedly the device itself. Under such flawed reasoning, Francom ignores crucial information. On the contrary, Irvine needed additional data points and was justified in utilizing the Zhu Declaration. Puffco's argument that the Zhu Declaration was responsive to document requests is misplaced. Regardless, Irvine disclosed her report on September 27, 2023 and was deposed October 13, 2023. The expert discovery deadline was October 20, 2023.

As explained above, district courts do not exclude evidence or testimony for late disclosure that is justified or harmless. (Fed. R. Evid. 37(c)(1)). "Substantial justifi[cation]" implicates the reason for the delay, while "harmless[ness]" requires inquiry into potential prejudice. *Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 12930456, at *1 (C.D. Cal. Nov. 9, 2012). The purpose of rebuttal testimony, moreover, is to explain, repel, counteract, or disprove evidence of the adverse party. *Id.* at *2 (internal quotation marks and citation omitted). Therefore, courts do not exclude materials that an expert may need to include to elaborate and challenge the assertions of the opponent's expert reports. *Id.* Cases in this district assessing Rule 37 exclusions generally involve untimely reports or untimely disclosed witnesses, not corrective information relied upon to apply a methodology. *Andrews v. Plains All Am. Pipeline, L.P.*, 2019 WL 6647928, at *5 (C.D. Cal. Nov. 22, 2019) (finding the untimely service of an expert report harmless where defendants can still assess and prepare responses); *Jarrow Formulas, Inc. v. Now Health Grp., Inc.,* No. 2012 WL 3186576, at *15 (C.D. Cal. Aug. 2, 2012) (denying untimely challenge because the party had ample opportunity to review the report and assess its contents).

In its Motion, moreover, Puffco cites *Syneron Med. Ltd. v. Invasix, Inc.*, 2018 WL 4696969 (C.D. Cal. Aug. 27, 2018) which bolsters SHO's argument. In *Syneron*, the moving party sought to strike an expert opinion because the expert relied upon license agreements that were not disclosed in fact discovery. *Syneron Med. Ltd. v. Invasix, Inc.*, 2018 WL 4696969, at *13 (C.D. Cal. Aug. 27, 2018). In *Syneron*, the

DEFENDANTS' OPPOSITION TO PUFF CORP.'S MOTION TO STRIKE OPINIONS OF DEFENDANTS' DAMAGES EXPERT SHELLY IRVINE

plaintiff argued that it relied on its expert to identify materials relevant to a hypothetical royalty negotiation and/or the *Georgia-Pacific* factors, and that the expert "independently conducted research and independently found the information he relied upon from public filings." *Id*. In other words, while Syneron's expert did not need the license agreement, he deemed it beneficial. Most importantly, the Special Master found that Syneron's failure to disclose was harmless because the opposing party had ample opportunity to take discovery and rebut the report. *Id*. Indeed, the opposing party deposed the expert after receiving his expert report. Even though the expert did not need the additional materials, the court held that Syneron's delay in disclosing the license was harmless and that an exclusion under Rule 37 was unwarranted. *Id*.

Here, like *Syneron*, Puffco took the opportunity to depose Irvine before the close of expert discovery, following receipt of her report. Better yet, unlike the expert in *Syneron*, Irvine needed the data to properly apportion the Accused Products—Syneron's expert "independently conducted research" to further his analysis; in other words, the license was not necessary, but preferred. By applying the *Syneron* court's holding, the Zhu Declaration could not be deemed harmful under Rule 37—the data points were preferred, but required, and was provided before Irvine's deposition. Based on Puffco's own argument, the Costed BOM is needless because Francom's supposed "conservative" approach apportions the entire device. In arguing a "conservative check", Puffco doubles-down on Francom's error.

Next, Puffco cites *Pavo Sols. LLC v. Kingston Tech. Co., Inc.* 2019 WL 8138163 (C.D. Cal. Nov. 20, 2019). In *Pavo*, Irvine was the defendant's damages expert. Irvine provided information in her report related to the defendant Kingston's financials, such as gross margins. The data happened to be inconsistent with the testimony of Kingston's 30(b)(6) witness. *Id*. at 11. Irvine had no control over the information provided by Kingston or its 30(b)(6) witness's testimony. Irvine's report happened to be precluded because the witness's testimony was inconsistent with the

data. The court's analysis regarding Pavo's motion to strike, cited by Puffco (*Id.* at *12) is wholly unrelated to timeliness and is inapplicable to the instant matter. Puffco falsely states that "Irvine was the expert in the foregoing case whose BOM-cost apportionment opinion was excluded by the district court, and which exclusion was affirmed on appeal." First, Irvine did not opine on BOM costs in *Pavo*, though the plaintiff's expert did. Next, there were no *Daubert* issues raised regarding BOMs and the ruling by the *Pavo* court underscores this point. The exclusion in *Pavo* relates to inconsistent financial information.

## B.    Irvine's BOM Analysis Methodology Is Regularly Accepted by the Federal Circuit

Irvine's apportionment analysis is appropriate. A bill of materials, for instance, can be used as a tool to apportion patented components. The apportionment rate can then be applied to the difference between the accused products profitability and that of comparable products. In assessing apportionment, experts must use "reliable and tangible evidence." *Enovsys LLC v. AT&T Mobility LLC*, 2015 WL 10383057, at *4 (C.D. Cal. Aug. 10, 2015) (quoting *Ericsson, Inc. v. D–Link Sys.,* Inc., 773 F.3d 1201, 1226 (Fed. Cir. 2014)). The evidence must tend to separate the accused's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative. *EcoServices, LLC v. Certified Aviation Servs., LLC*, WL 11583148, at *11 (C.D. Cal. May 7, 2019), *aff'd*, 830 F. App'x 634 (Fed. Cir. 2020) (internal quotations and citations omitted). Puffco is not arguing that the Costed BOM is conjectural or speculative but rather equating the apportionment rates derived from the costs to the overall value of the inventive aspect. By doing so, Puffco is conflating apportionment rates with royalty rates.

Here, Irvine reviewed SHO's technical expert reports and assessed the patented component applications in portable e-rigs and their specific configuration. (Dkt. 170-3 at ¶ 67). Irvine also assessed the Zhu Declaration which correlates the inventive

components to line items in Costed BOMs. Puffco oversimplifies the analysis by claiming that Irvine argues "BOM-cost=value". Nowhere in Irvine's report is there any statement to support Puffco's argument. In fact, Irvine's BOM cost analysis is the first step in determining a royalty rate, and correlates to an apportionment rate. After determining an apportionment rate, Irvine analyzes the *Georgia-Pacific* factors and in doing so identifies the Accused Products' "gross profit". Irvine then considers the impact of the *Georgia-Pacific* factors including: the apportionment rate applied to the profit margins, yielding an amount attributable "to the *specific functionality*, representing the footprint of the *invention/incremental improvement* over prior art." (Dkt. 107-3 at ¶ 154-57) (emphasis added). By the same token, Francom relies "on manufacturer cost lists, invoices, inventory lists and other documents that show the costs of the kit components." (Dkt. 121-6 at ¶ 41). Francom divides "the total [cost] of the patented components" by "the total of listed prices of all kit components." *Id*. at ¶ 45. Francom is similarly using the Accused Products' price and cost information as a basis point to "apportion." If it is Puffco's argument that "BOM-costs=value" it would equally apply to Francom's analysis. Francom subsequently applies his "appointment" rate against the gross profit margins of the Accused Products. While the apportionment rate and royalty rate are distinct, Puffco obscures the concepts.

In support of its argument, Puffco relies on *AstraZeneca AB v. Apotex Corp.* which is inapplicable to the instant matter. In *AstraZeneca*, the plaintiff's patents comprised the drug's core, the coating, and subcoating. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015). The Federal Circuit found that the combination of those elements constituted the complete product. Astrazenca's patents, therefore, covered the entire accused product, not a single component of a multi-component product. *Id*. The entire drug, therefore, including the active ingredients and coating, "cover the infringing product as a whole[.]" *Id*. The Federal Circuit reasoned that "Astra's formulation" was "a new, commercially viable omeprazole drug." *Id*. at 1340. The court further states that even "when a patent covers

the infringing product as a whole, and the claims recite both convention elements and unconventional elements, *the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone*." *Id*. 1338 (emphasis added). Puffco fails to properly apply *AstraZeneca*'s rationale to this matter. First, a vaporizer atomizer and mouthpiece does not equate a novel pharmaceutical, comprising a new innovation. To compare Puffco's products to Astrazenca's Omeprazole, and apply *AstraZeneca* to this case, is unsound. *AstraZeneca* holds that if a patent claims an entire product, the party must still differentiate between the value of inventive components and conventional components—again, Francom did not differentiate any inventive components.

Lastly, Puffco cites another matter involving the *Pavo Sols. LLC v. Kingston Tech. Co., Inc.* Federal Circuit opinion which is inapplicable to the instant matter. In *Pavo*, the Federal Circuit assesses Pavo's expert's analysis of comparable licenses and implementation of a profit-split model. *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1379 (Fed. Cir. 2022). These issues are wholly unrelated to the instant dispute. Puffco seems to hang its hat on Kingston's secondary argument—that Pavo's expert failed to attribute value to Pavo's technology by relying solely on materials costs. For instance, Kingston argues that it paid 35 cents in casing costs for the accused products which is less than the 40-cent royalty Pavo's expert proposed. *Pavo Sols. LLC* 35 F.4th at 1379. The Federal Circuit reasoned that material costs are not the same as the value of the patented feature. Kingston's comparison of casing costs to royalty rates is wholly unrelated to Irvine's use of a Costed BOM to apportion. *Id*. Puffco's application of *Pavo* is also improper because the *Pavo* court does not in any way suggest that apportionment cannot be derived from a Costed BOM.

### C.    This Circuit and the Federal Circuit Allows for Potential Non-Infringing Substitutes

Irvine's assessment of the Carta 2 as a non-infringing substitute is appropriate. This circuit and the Federal Circuit have long held that "a lost profits award requires (1) a showing that the patent owner would have made the sale but for the infringement, i.e., causation existed, and (2) proper evidence of the computation on the lost profits. *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 863 (Fed. Cir. 1985). A permissible way to meet the above requirements for entitlement to lost profits is by satisfaction of the four-part test set forth in *Panduit test*. To satisfy the *Panduit* test, the patentee must prove (1) a demand for the patented product, (2) *an absence of acceptable noninfringing substitutes*, (3) the marketing and manufacturing capability to exploit demand, and (4) the amount of profit the patentee would have made but for the infringement. *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984).

At no point in its Motion, however, does Puffco assess the *Panduit* test or put forth a reasonable argument contesting the Carta 2 as an acceptable noninfringing substitute. Rather, Puffco resorts to arguing that (1) summary judgment may determine whether the Carta 2 infringes the '334 Patent; (2) that the Carta 2 was not available during the hypothetical negotiation date; (3) reverting back to inflating Irvine's BOM-cost assessment; and (4) misapplying *Pavo Sols. LLC v. Kingston Tech. Co., Inc.* Alternatively, non-infringement of the Carta 2, first, should be determined at summary judgment in SHO's favor; second, the Carta 2 was available during the relevant "accounting period"[1]; third, the BOM argument is misplaced; and fourth, *Pavo Sols. LLC v. Kingston Tech. Co., Inc.* does not assess the doctrine of non-infringing substitutes.

---

[1] The Federal Circuit has explained that availability of the alternate is determined by the accounting period. *Nichia Corp. v. Feit Elec. Co.. Inc.*. 2022 WL 17222250. at *24 (C.D. Cal. Oct. 12. 2022) (citing *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999)).

In the instant matter, Irvine first explains that the cost to re-tool the Carta 2 as a non-infringing[2] alternative to the Carta OG is $5.00. *Id*. Irvine compares the "design-around" cost of the Carta 2 atomizer with the cost of the Carta OG atomizer because SHO's technical experts opined that the Carta 2 atomizer does not infringe on '334 Patent. (Dkt. 107-3 at ¶ 162). Accordingly, Irvine identified the difference between the cost of atomizers for the Carta and Carta 2. Irvine also discussed with Focus Hi-Tech "that adapting the Carta to use the Carta 2 atomizer would require a retooling effort, including a redesign of the Carta base." Irvine states, therefore, that it would be reasonable for SHO to pay over the $5.00 design-around cost in the form of a royalty to avoid having to incur retooling and design expenses. *Id*. Irvine does not argue that the difference in BOM-cost prices between the atomizers equates the design-around cost; rather, the opposite is true—Irvine posits that the in addition to the materials cost, "SHO would expect to incur additional expenses, such as design and development costs (e.g., testing, refining), tooling costs, and costs arising from changes to packaging and the Carta user manual." (Dkt. 107-3 at ¶ 163, n. 364) (referencing discussions with SHO's head of product). By arguing that there is an "analytical gap between the data and Irvine's opinion", Puffco ignores the crux of Irvine's analysis.

### D.    Irvine Is a Damages Expert and Does Not Claim to Be an Industry Expert

Irvine only references the '334 Patent's "footprint in the marketplace" or "improvements over prior art" when citing to other expert reports. (Dkt. 107-3 at ¶ 9, n. 5; 57, n. 163; 67, n. 187; 85, n. 215). At no point does Irvine opine on the vaporizer industry as an expert and relies on SHO's technical expert testimony. Aside from other expert reports, Irvine cites Federal Circuit cases such as *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) and *Uniloc USA, Inc. v. Microsoft*

---

[2] SHO may refer to infringement or any variation thereof in furtherance of its arguments but at no point is conceding infringement.

*Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) when referring to the "marketplace". *Id*. at 58, n. 165; 143, n. 329. Puffco nevertheless falsely claims that Irvine offers "these opinions" as her own despite having "no knowledge or expertise on the marketplace for portable electronic vaporizers". Any reference by Irvine in her testimony regarding incremental improvements over prior art derives from SHO's technical experts. *Id*. at 66, n. 186. Irvine does not claim to have such knowledge and does not intend to testify as a technical or industry expert. While Irvine will not opine on the vaporizer market, she may refer to separate expert testimony or case law regarding the same, and Puffco can object at trial as it sees fit.

## V.    CONCLUSION

In sum, (a) Irvine is substantially justified in using a Costed BOM because it was necessary to properly apportion the Accused Devices and Puffco fails to show any harm through prejudice or surprise; disruption at trial; or bad faith; (b) her BOM-cost analysis is appropriate; (c) the non-infringing substitute assessment is standard; and (d) Irvine does not claim to be an technical or industry expert. For the foregoing reasons, Defendants SHO Products, LLC and Masterminded, Inc. respectfully request that the Court deny Puff Corp.'s Motion to Strike Opinions of Defendants' Damages Expert Shelly Irvine.

Dated: February 29, 2024                    Respectfully submitted,

                                            **CALDWELL INTELLECTUAL PROPERTY LAW LLC**
                                            JAMESON J. PASEK

                            By:    _____*/s/ Jameson J. Pasek*_____
                                            Attorneys for Defendants and Counterclaimants SHO Products, LLC and MasterMinded, Inc.

DEFENDANTS' OPPOSITION TO PUFF CORP.'S MOTION TO STRIKE OPINIONS OF DEFENDANTS' DAMAGES EXPERT SHELLY IRVINE

## L.R. 11-6.2. Certificate of Compliance

The undersigned, counsel of record for Defendants SHO Products, LLC and Masterminded, Inc., certifies that this brief contains 6,080 words, which complies with the word limit of L.R. 11-6.1. In making this certification, the undersigned has relied on the word count of the word processing system used to prepare the document.

Dated: February 29, 2024

Respectfully submitted,
**CALDWELL INTELLECTUAL PROPERTY LAW LLC**
JAMESON J. PASEK

By:      /s/ Jameson J. Pasek

Attorneys for Defendants and Counterclaimants SHO Products, LLC and MasterMinded, Inc.

DEFENDANTS' OPPOSITION TO PUFF CORP.'S MOTION TO STRIKE OPINIONS OF DEFENDANTS' DAMAGES EXPERT SHELLY IRVINE